UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK



U.S. DISTRICT COURT - N.D. OF N.Y.
FILED

JUN 1 2 2017

AT_____ O'CLOCK_____
COMPLAINT Clerk - Syracuse

Jerrell Wright  #19485-052

Plaintiff(s),

v.

Rensselaer County Jail, et al,

Defendant(s).

(Pro Se Prisoner)

Case No. 9:17-cv-622
(Assigned by Clerk's
Office upon filing)

**Jury Demand**
☒ Yes
☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore **not** contain: an individual's social security number, taxpayer identification number, or birth date; the name of a person known to be a minor; or a financial account number. A filing may include *only*: the last four digits of a social security number or taxpayer-identification number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. *See* Fed. R. Civ. P. 5.2.

---

I.   **LEGAL BASIS FOR COMPLAINT**

This is a civil action seeking relief and/or damages to defend and protect the rights guaranteed by the Constitution and laws of the United States. Indicate below the federal basis for your claims.

☒ 42 U.S.C. § 1983 (state, county, or municipal defendants)
☒ *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) (federal defendants)     Medical Billing Fraud
☒ Other (please specify) _____

## II.   PLAINTIFF(S) INFORMATION

Name:              Jerrell Wright

Prisoner ID #:     19485-052

Place of detention: FCI Fort Dix

Address:           P.O. Box 2000

                   Jointbase MDL, NJ 08640

Indicate your confinement status when the alleged wrongdoing occurred:

- ☒ Pretrial detainee
- ☐ Civilly committed detainee
- ☐ Convicted and sentenced state prisoner
- ☐ Convicted and sentenced federal prisoner
- ☐ Immigration detainee

Provide any other names by which you are or have been known and any other identification numbers associated with prior periods of incarceration:

If there are additional plaintiffs, each person must provide all of the information requested in this section and must sign the complaint; additional sheets of paper may be used and attached to this complaint.

## III.   DEFENDANT(S) INFORMATION

Defendant No. 1:   Rensselaer County Jail

                   Name (Last, First)

                   County Jail and Detention Center

                   Job Title

                   4000 Main Street

                   Work Address

                   Troy, NY 12180

                   City              State          Zip Code

Defendant No. 2:   Rensselaer County

                   Name (Last, First)

                   Rensselaer County Municiality

                   Job Title

2

4000 Main Street

Work Address

Troy, NY 12180

| City | State | Zip Code |
|------|-------|----------|

Defendant No. 3:

Correctional Medical Care, Inc.

Name (Last, First)

Rensselaer County Jail Medical Provider

Job Title

4000 Main Street

Work Address

Troy, NY 12180

| City | State | Zip Code |
|------|-------|----------|

Defendant No. 4:

Jane Doe

Name (Last, First)

Medical Provider

Job Title

Troy, NY 12180

Work Address

| City | State | Zip Code |
|------|-------|----------|

If there are additional defendants, the information requested in this section must be provided for each person; additional sheets of paper may be used and attached to this complaint. (see Attachment II)

## IV.   STATEMENT OF FACTS

State briefly and concisely the facts supporting your claims. Describe the events in the order they happened. Your statement of facts should include the following:

- The date(s) on which the events occurred
- Where these events took place (identify the facility and, if relevant, the specific location in the facility)

3

- How each defendant was involved in the conduct you are complaining about

If you were physically injured by the alleged misconduct, describe the nature of your injuries and the medical evaluation and treatment you were provided. You need not cite to case law or statutes or provide legal argument in the Statement of Facts. Use additional sheets of paper if necessary.

(see Attachment IV)

## V.   STATEMENT OF CLAIM(S)

State briefly and concisely the constitutional and/or statutory basis for each claim you seek to assert and identify the defendant(s) against whom each claim is

asserted. Commonly asserted claims include: excessive force; failure to protect; deliberate indifference to medical needs; unconstitutional conditions of confinement; denial of due process in a disciplinary or other proceeding; denial of equal protection; retaliation for the exercise of a First Amendment right; and interference with free exercise of religion. Legal argument and case citations are not required. Use additional sheets of paper if necessary.

## FIRST CLAIM

(See Attachment VI for 1st, 2nd,

3rd, 4th, 5th, and 6th Claims)

_____

_____

_____

## SECOND CLAIM

_____

_____

_____

## THIRD CLAIM

_____

_____

_____

## VI.   RELIEF REQUESTED

State briefly what relief you are seeking in this case.

(see Attachment VII)

_____

_____

I declare under penalty of perjury that the foregoing is true and correct.

Dated: _6/4/2017_        _Jerrell Wright_

Plaintiff's signature
(All plaintiffs must sign the complaint)

(revised 10/2/16)

United States District Court
Northern District of New York

Jerrell Wright, #19485-052 )
    Plaintiff,              )
                            )
    v.                      )          Case No.:
                            )
Rensselaer County Jail, et al.)
    Defendants.             )

Monell Claim, Bivens Claim, Medical Billing Fraud,
Federal Tort Claim and Americans with Disabilities Act Claims

NOW COMES Jerrell Wright, with a Formal Complaint being filed

against the named and John Doe Defendants:

Plaintiff now sets forth the following:

    I.    Plaintiff's name, address and title.

    II.   Defendants name, address, and title.

    III.  Jurisdiction.

    IV.   Statement of Claim

    V.    Timely Argument

    VI.   Claims

    VII.  Relief Sought

## I. Plaintiff's Name, and address

1.  Name:    Jerrell Wright, Reg. No. 19485-052
             PO Box 2000
             Joint Base MDL, NJ 08640

## II. Defendants name, and address

1.  Name:    Rensselaer County Jail
    Address: 4000 Main St. Troy NY, 12180
    Title:   County Jail in Troy, New York.

2.  Name:    Rensselaer County (Municipality)
    Address: 4000 Main st. Troy NY, 12180

- 1 -

Title:    Municipality that oversees the Rensselaer County
          Jail.

3.   Name:    Correctional Medical Care Inc.
     Address: 4000 Main st. Troy NY, 12180
     Title:   Medical Care Providers for Rensselaer County Jail

4.   Name:    Jane Doe
     Address: 4000 Main St. Troy NY, 12180
     Title:   Medical Provider

5.   Name:    Jane Doe
     Address: 4000 Main St. Troy NY, 12180
     Title:   Medical Provider

6.   Name:    Jane Doe
     Address: 4000 Main St. Troy NY, 12180
     Title:   Medical Provider

7.   Name:    Jane Doe
     Address: 4000 Main St. Troy NY, 12180
     Title:   Medical Provider

8.   Name:    Jane Doe
     Address: 4000 Main St. Troy NY, 12180
     Title:   Medical Provider

9.   Name:    John Doe
     Address: 4000 Main St. Troy NY, 12180
     Title:   Medical Provider

10.  Name:    John Doe
     Address: 4000 Main St. Troy NY, 12180
     Title:   Medical Provider

11.  Name:    John Doe
     Address: 4000 Main St. Troy NY, 12180
     Title:   Medical Provider

12.  Name:    John Doe
     Address: 4000 Main St. Troy NY, 12180
     Title:   Medical Provider

13.  Name:    John Doe
     Address: 4000 Main St. Troy NY, 12180
     Title:   Medical Provider

14.  Name:    John Doe Officer
     Address: 4000 Main St. Troy NY, 12180
     Title:   Rensselaer County Jail Officer

15.  Name:    John Doe Officer
     Address: 4000 Main St. Troy NY, 12180
     Title:   Rensselaer County Jail Officer

16.  Name:     John Doe Officer
     Address:  4000 Main St. Troy NY, 12180
     Title:    Rensselaer County Jail Officer

17.  Name:     John Doe Officer
     Address:  4000 Main St. Troy NY, 12180
     Title:    Rensselaer County Jail Officer

18.  Name:     John Doe Officer
     Address:  4000 Main St. Troy NY, 12180
     Title:    Rensselaer County Jail Officer

19.  Name:     John Doe Officer
     Address:  4000 Main St. Troy NY, 12180
     Title:    Rensselaer County Jail Officer

20.  Name:     John Doe Officer
     Address:  4000 Main St. Troy NY, 12180
     Title:    Rensselaer County Jail Officer

21.  Name:     John Doe Officer
     Address:  4000 Main St. Troy NY, 12180
     Title:    Rensselaer County Jail Officer

22.  Name:     John Doe
     Address:  1750 Crystal Dr. Arlington, VA 22202
     Title:    United States Marshals Representative

23.  Name:     Jane Doe
     Address:  2215 Burdett Ave. Troy NY, 12180
     Title:    Samaritan Medical Provider

24.  Name:     Jane Doe
     Address:  2215 Burdett Ave. Troy NY, 12180
     Title:    Samaritan Medical Provider

25.  Name:     Jane Doe
     Address:  2215 Burdett Ave. Troy NY, 12180
     Title:    Samaritan Medical Provider

## III. Jurisdiction

Plaintiff Claims arose from incidents that occurred at, or from, the Rensselaer County Jail located in Rensselaer County New York.  The District Court of Northern District of New York is the proper venue for the Federal Questions being presented.

## IV. Statement of Claims

1.  Plaintiff brings these Claims after two separate Government

interferences with his limited due process rights.  These
interfering's have been shown to have only one actual purpose -
to purposely run-out the applicable statutes of Limitations.
Plaintiff has specifically filed a claim (Sixth Claim) which
alleges the Defendants deprived the Plaintiff of Rights under the
color of law.  That deprivation Obstructed Justice and caused
damage to Plaintiff's right to access the Courts in a timely
manner.

2.    Plaintiff's First through Fifth claims allege that Plaintiff
was subjected to substantial risk of contamination of infectious
communicable infections and diseases when the Defendants used the
Plaintiff to clean up known medical hazardous waste with limited
protective tools such as plastic gloves and improper disinfectant
checmicals.

3.    Plaintiff further provides the Defendant's abusive NON-
medical transports to and from the hospital, and a full
abandonment of necessary ongoing "serial monitoring" of a post-
surgery wound, rises to the level of Deliberate Indifference.

4.    Plaintiff was able to discover these facts only when he
finally received his medical records from Defendants on
6/12/2015.  Plaintiff also discovered the record supports that
the Defendant's abandonment of necessary ongoing care caused
"further" injuries that were unknown to the Plaintiff until
6/12/2015.  See Exhibit 2B.

5.    Upon full review of the medical records on 8/1/2015, the
Plaintiff discovered that the abandonment of the Plaintiff's
necessary ongoing medical care was purposefully done to shift the
burden of the Plaintiff's ongoing (and expensive) medical care
costs onto the Public - and off the County Jail's billing
responsibilities.

6.    Plaintiff has shown "Good Cause" for "tolling" of the
statute of limitations in Part Five below.

7.    Plaintiff has included evidence to support his claims of
Fraud in this "Heightened pleading" as required by the Federal
Rules of Civil Practice ("FRCP") 8.

8.    Plaintiff includes a Declaration in Support of the Complaint
and also supplies the Court with a Poverty Declaration to waive
any filing fees until the conclusion of this matter, or payment
mode during if necessary.

9.    Plaintiff is currently a Federal inmate who represents
himself Pro Se.  Plaintiff PRAYS that the Courts construe his
pleading liberally and hold them to a less stringent standard as
required by Haines v. Kerner, 404 US 519 (1972).

10.  In support of these claims, Plaintiff now states as follows:

- 4 -

## V. Timely Argument

1.    Plaintiff now brings his arguments and Memorandum of Law in support of his need to have the Statute of Limitations of 3 years equitably tolled 1 year and 6 months due to the Defendant's refusal to provide the Plaintiff with his requested Medical Records.  Plaintiff presents below a chronology of facts and supportive evidence that supports the Plaintiff was unaware of any wrong-doing, Neglect, Medical Malpractice or Deliberate Indifference to his medical needs until he reviewed his Medical Records on 6/12/2015.

      Plaintiff establishes below his medical issues, when they officially ended, and when the Plaintiff became aware that the medical abuse was prompted by the Defendants attempts to avoid medical billing.  These facts could only be seen by a "full" review of the medical files that were ordered on 3/26/2014, and purposely withheld until 6/12/2015.

2.    On 8/17/2013 the Plaintiff entered the Samaritan Emergency Room for extreme pain and swelling in the back left thigh near the groin area.  By 8/18/2013 Plaintiff had undergone an Emergency Surgery that removed a 22cm by 15cm patch of skin approximately 1-inch deep.  See Exhibit 12.

3.    Plaintiff was then released on 8/31/2013 in the morning, and returned later that day due to his vital signs and the inability of the County Jail medical department to care for such a large wound that needs 24-hour monitoring.  See Exhibits 19, 20 & 21.

4.    Plaintiff stayed at the hospital until 9/3/2013.  He was transported back to the County Jail in the morning, and again had complications and was re-admitted to the hospital again.  However, the new hospital was St. Mary's and the Plaintiff was in a "wound care" wing of the hospital.  See Exhibits 22, 23 & 24.

5.    On 9/6/2013, the Plaintiff was released back to the Rensselaer County Jail with specific ongoing care prescriptions that require the Plaintiff to be brought back to the hospital weekly for ongoing wound care.  See Exhibit 29.

6.    At the end of December 2013, the Wound Care ended and the Plaintiff was transferred to Federal Correctional Institution Fort Dix in New Jersey.

7.    Plaintiff ordered his medical records on 3/26/2014 unaware of any wrong doings by the Rensselaer County, Rensselaer County Jail, and its Medical Department, Correctional Medical Care, Inc.  See Exhibit 30.

8.    Plaintiff made numerous attempts to obtain the medical records.  However, the Defendants continued to withhold the records until 6/12/2015.  See Exhibit 27.

9.   Upon receipt of the medical records on 6/12/2015, the
Plaintiff, with his family's help, identified Deliberate
Indifference to medical needs, and attempted medical billing
fraud.  Plaintiff officially realized that he had suffered a
"wrong" on the days proceeding the receipt of the medical records
on 6/12/2015.  See Exhibits 28 & 25.

"The crucial time for accrual (of Statute of Limitations)
purposes is when the plaintiff becomes AWARE that he is suffering
from a wrong for which damages may be recovered in a civil
action."  Wallace v. Kato, 549 US 391, 127 S.Ct. 1091, 166 L.Ed.
2d 973 (2007) see also Singleton v. City of N.Y., 632 F.2d 185,
192 (2nd Cir. 1980).

10.  Plaintiff immediately following the AWARENESS of the wrong,
filed his claims diligently in the New York Court of Claims.  See
Exhibits 31 and the US Department of Justice see Exhibit 33.

11.  On December 2015, the Court of Claims of New York replied
that the claim was out of their jurisdiction and that claim was
denied.  See Exhibit 32.

12.  On January 24th, 2017, the U.S. Department of Justice denied
the Plaintiff's claims.  See Exhibit 34.

13.  Plaintiff, since the receipt of the Medical Records on
6/12/2015, has diligently pursued his claims.  The only delay
that there ever was was the extraordinary delay of the requested
medical records that were requested on 3/26/2014 - and withheld
until 6/12/2015.  See Exhibits 30, 27 & 28.

14.  Plaintiff believes that the time from 3/26/2014 to 6/12/2015
should be equitably tolled due to the extraordinary period of
time it took to get simple medical records that are supposed to
be available by law.  Plaintiff believes that the Federal Tort
Claim response was also withheld causing even further delay.  See
Exhibit 32.

See Goldblatt v. Nat'l Credit Union Admin., 502 F.Appx. 53,
55 (2nd Cir. 2012) (quoting A.Q.C. ex rel. Castillo v. United
States, 656 F.3d 135, 144 (2nd Cir. 2011).

15.  Plaintiff's diligent pursuit of his claims was predated by
his diligent pursuit of the medical records.  The Defendants
withholding of these records was part of the "Continual Wrong
Doctrine" that shows that Defendants withheld the Records to
purposely run out the statute of limitations.  See Kaymakcian v.
Board of Managers of the Charles House Condominium, 49 A.D. 3d
407, 854 N.Y.S. 2d 52, 53 (1st Dep't, 2008).

16.  Plaintiff "Diligently sought information he needed to
identify" the wrong, and that time therefore should be tolled
from 3/26/2014 to 6/12/2015, and from 8/10/2015 to January 24,
2017 when the Federal Tort Claim was finally answered.  See

- 6 -

Murphy v. West (2008, WDNY) 533 F. Supp. 2d 312.

17.  Plaintiff has shown that he was diligently pursuing his claims from when he had realized any wrong-doing had occurred. This date of awareness was 6/12/2015.  Plaintiff believes the Court should toll the statute of limitations from 3/26/2014 to 6/12/2015 and toll the time again from 8/10/2015 to 1/24/2017 for the Federal Government's 1 year and 4 month delay.  See Exhibits 33 & 34.

18.  The Defendants should not benefit from their dilatory withholding of medical records, and US Marshal's withholding Tort Claim - Thus making the statute of limitations properly time should be tolled to December of 2018 based on a 3 year statute of limitations.

19.  Plaintiff should be Granted Equitable Tolling from 3/26/2014 to 6/12/2015 and then from 8/10/2015 to January 24th 2017, due to the Government's purposeful delay of medical records, and the needed response of Tort Claim filed.  See Exhibits 31, 32, 33 & 34.

20.  Plaintiff prays that the Courts Grant Equitable Tolling for the Government's delays that have caused injury to the Plaintiff's 3 year statute of limitations.  See Owens v. Okure, 488 US 235, 250-251 (1989).

## VI. Claims

### A. First Claim:

Monell Claims, and Breach of Duty to create and enforce policy that protects the Plaintiff/Inmate from:
(1) Medical abuse with Cruel and Unusual Punishment
(2) Medical Abandonment to commit medical billing fraud
(3) Misuse of inmate labor to clean up hazardous human waste
(4) Misuse of inmate labor to clean up known infectious disease contaminated cells
(5) Proper training of inmates who handle hazardous human waste and known infectious disease contaminated cells
(6) Purposeful exposure to known infectious disease contaminants and/or hazardous human waste including, but not limited to:

> (a) Feces
> (b) Urine
> (c) Vomit
> (d) Bodily fluid such as:
>> (1) blood;
>> (2) infectious discharge;
>> (3) spit, and
>> (4) sperm.
> (e) Soiled bandages
> (f) Soiled toilet paper
> (g) Soiled clothing, and
> (h) Soiled linens.

(7) Medical dumping.

Defendants
Rensselaer County, Rensselaer County Jail; Correctional Medical
Care Inc.; Jane Doe Medical Provider; Jane Doe Medical Provider;
Jane Doe Medical Provider; Jane Doe Medical Provider; Jane Doe
Medical Provider; Jane Doe Medical Provider; John Doe Medical
Provider; John Doe Medical Provider; John Doe Medical Provider;
John Doe Medical Provider; John Doe Medical Provider; John Doe
Officer; John Doe Officer; John Doe Officer; John Doe Officer.

Claim
        From 2/2/2012 to December 2013, the Rensselaer County
Authorities did the following:

1.   From 2/2/2012 to December 2013, the Rensselaer County failed
to provide or enforce policies that would create and maintain a
reasonably clean environment inside the Rensselaer County Jail.

2.   From 2/2/2012 to December 2013, the Plaintiff was subjected
to live with visual trash littered about.  Rust, human waste,
food and unknown substances were embedded in every corner and
crease.  The smell of feces and urine was ever present.  The
filth was unavoidable and put the Plaintiff at risk of
contamination of infections and diseases.

3.   Plaintiff's mental health began to decline soon after being
detained at the Jail in 2012 (2/2/2012).  Plaintiff soon became
an Orderly to attempt to improve the cleanliness of his
surroundings.

4.   Plaintiff was never trained in removal methods of human
waste or infectious disease materials that were present in many
cells.

5.   Plaintiff was not warned of any risks related to contact
with ANY materials, or warned of any cross-contamination risks
there were from direct contact with Hazardous Human Waste and/or
Infectious Disease waste.

6.   Plaintiff was given 1 pair of re-usable gloves that quickly
became contaminated with feces, urine, vomit, blood, puss, sperm,
and other unidentified bodily fluids left in cells and showers.

7.   Plaintiff was forced to use those gloves even when they
became older and had obvious tears and rips in them.  Plaintiff's
attempts to get new gloves were denied due to "security
concerns".

8.   Plaintiff soon contracted a deadly infection and was in
desperate need of emergency medical intervention on 3/14/2013.
See Exhibits 3 & 5.

9.   Defendants withheld emergency medical attention while making

false medical reports that under-report the Plaintiff's true condition. See Exhibits 1, 2 & 4.

10.  Defendants then deny the needed "medical transport" to save money, and provide a NON-medical transport that forced the Plaintiff to sit on his injury on 8/17/2013. See Exhibits 3, 4 & 5.

11.  Defendants continue to provide NON-medical transports to save money at the expense of Plaintiff's health on 8/31/2013 at 10am, later at 3pm on 8/31/2013, again on 9/3/2013, 9/6/2013, and approximately 20 more times from 9/6/2013 to December 2015. See Exhibits 12, 15, 19 & 29.

12.  Defendants falsely agreed to continue needed continuous wound care on 9/3/2013 and then denied that care. See Exhibits 19 & 20.

13.  Defendants falsely agreed to provide ongoing "Wound Vacuum Care" to the Plaintiff when he was released by the Samaritan Hospital that had possession of the Plaintiff. However, the Plaintiff was quickly returned to the Rensselaer County Jail and released from the jail to the streets with no care, no plan of care, no guidance on how to get care, no help to get to care, no way to fill prescriptions, and no way to get the continued care that was agreed upon by the Rensselaer County Jail officials and the Samaritan Hospital earlier that day. See Exhibits 19 & 20.

14.  Defendants then did push off the continued medical billing onto the public to avoid being billed at the Rensselaer County Jail. See Exhibits 21, 22, 23, 24 & 25.

15.  Plaintiff then suffered 14 hours of absence of care and was further injured until 9/6/2013 when he was released back to the Rensselaer County Jail. See Exhibits 19, 20, 21, 22, 23, 24 & 25.

16.  The Defendants were not supervised, no superiors intervened in the on-going abuse, and the Rensselaer County Jail continued to avoid the medical bills while the Plaintiff continued to be denied needed medical transports to further save money. See Exhibits 25 & 29.

Defendants Violations

17.  The Defendants deliberately failed to supervise their subordinates and allowed the Jail to be so dirty and unhealthy that it began to cause the Plaintiff mental health degeneration and then physical degeneration that led to injury and damages.

18.  The Defendants deliberately allowed the County Jail, and its Medical Department, to use the Plaintiff's labor to clean-up hazardous human waste and infectious disease materials with insufficient protective gloves, masks, eye protection, chemicals

- 9 -

and soiled tools such as mops, rags and brooms.

19.  The Defendants allowed the County Jail and its Medical
Department to use the Plaintiff's labor without <u>warning</u> the
Plaintiff of the <u>substantial risk</u> of cross-contamination from the
direct contact with hazardous human waste and infectious disease.

20.  The Defendants allowed the County Jail and the Medical
Department to use the Plaintiff to clean out cells where known
communicable diseases could be present.

21.  Defendants allowed the County Jail to deny needed medical
transports to save money.

22.  Defendants allowed the County Jail to take the Plaintiff
from a hospital with specific instructions of continued care, and
cancel that care and, literally, set the injured patient at the
curb.  Defendants "dumped" the patient in the middle of an
<u>ongoing</u> medical crisis to take the bill off of the County Jail.
Defendants enjoyed the cost savings at the expense of Plaintiff's
health.  See Exhibits 19, 20, 21, 22, 23, 24, 25 & 29.

23.  The Defendants allowed their subordinates to maintain a
dirty environment that degrades mental <u>and</u> physical health.
Defendants were then allowed to go unnoticed as they delayed the
physical damages from the records in an attempt to "hide" the
damages found on 8/11/2013.  See Exhibits 1 & 2.

24.  The Defendants further violated the Plaintiff with NO
interruptions as he was transported to and from the Hospital with
what was then known as a 22cm by 15cm piece of missing flesh on
his groin/buttock area.  See Exhibit 12.

25.  The Defendants, uninterrupted, pulled the Plaintiff from his
hospital bed and brought him to the County Jail under the <u>false</u>
<u>pretense</u> that he will be given "constant" care on "monitoring",
when in fact he was quickly "dumped" to the curb of the jail and
told to find his own help.  See Exhibits 19, 20, 21, 22, 23, 24 &
25.

26.  The Plaintiff presents a "Monell" claim that specifically
states that the municipality has all but "condoned" attempted
medical fraud at the expense of the Plaintiff's health.

27.  Plaintiff's "Monell" claim holds that the municipality
supported the misconduct by the following:

> (1) Refusing to obtain knowledge to avoid responsibility of
>     subordinates acts,
> (2) Refusing to enforce policy meant to protect the
>     Plaintiff's living conditions;
> (3) Refusing to enforce policy meant to protect the
>     Plaintiff's rights to reasonable medical accommodation;
> (4) Refusing to enforce policy meant to provide



accommodations under Americans with Disabilities Act;

(5) Breech of Duty of public trust by allowing County Jail and Medical Department to "dump" a patient in medical need;

(6) Failure to supervise subordinates, and failure to "learn" or "investigate" serious medical issues of spreading of communicable infectious disease.

<u>Relief Sought</u>

28.  <u>Compensatory Damages</u>: The County Superiors, the County Jail Superiors, and Correctional Medical Care Inc. Supervisors failed to supervise their subordinates even after the Plaintiff's condition was known to be life threatening and serious.  The Superiors worked "with" the U.S. Marshals to release the inmate into the public under false pretenses established in the medical records that state the "facility" will be able to provide the care the Plaintiff needed.  The Superiors remained silent as the Plaintiff was further subjected to what's known as "patient dumping".  The Plaintiff suffered horrific pain and loss of bodily mass under the back left buttock into the groin. Plaintiff is permanently disfigured and has continuous ghost pains from the nerves.  The Defendants then did continue to cause further pain and suffering with NON-medical transports that prolonged the healing.  Plaintiff believes that the municipality should compensate the Plaintiff with $5,000,000 for past, present and future medical issues, disfigurement of his body that was 22cm by 15cm, and the future expense of complications that will arise due to the dramatic aging of his organs that had taken place during the height of the infection.

29.  <u>Punitive Damages</u>: The Plaintiff's mental health and physical health had generally declined while being a detainee awaiting the outcome of charges against him.  However, his physical health clearly gave rise to a new fight for his life that took precedence over his criminal fight.  The Plaintiff suffered loss of body, aging of body, extreme pain and suffering, ongoing torment of NON-medical transports that forced him to sit directly on an open wound, and the looming terror of a "re-infection" by remaining in the filthy environment that caused the original infection.  Plaintiff subsequently was unable to fathom staying any longer at the County Jail due to it's potential to kill him, or maim him further.  Plaintiff's criminal case suffered and Plaintiff was - in effect - coerced into taking any deal and swiftly getting away from the County Jail.  Plaintiff's due process was invaded by the environment of the County Jail, and therefore, the Plaintiff's mental degeneration had a direct effect on the Due Process while he was being "held" as a free man awaiting his day in court.  Plaintiff suffered on all fronts, loss of body mass, extreme pain and suffering, constant abusive transports, abandonment, and then he took what ever was available in his criminal case so he could leave the jail once and for all. Plaintiff believes that the Defendants should pay a nominal deterrent of $2,000,000 for their blatant disregard of their

responsibilities and how they not only caused physical and mental damages, but how they allowed the conditions of confinement to influence the outcome of a federal criminal case.

30.   Injunctive Relief: Plaintiff believes that the Defendants are engaged in medical billing fraud.  Plaintiff PRAYS the District Court has the courage to refer this issue over to Federal Prosecutors for further review.

## B. Second Claim
Purposeful Delay of Emergency Medical Intervention and False Medical Reporting to Hide Delay, and Purposefully under-Treating Plaintiff's Condition

### Defendants
Correctional Medical Care Inc., Jane Doe Medical Provider; Jane Doe Medical Provider; Jane Doe Medical Provider.

### Claim
       From 8/11/2013 to 8/17/2013, the Defendants ignored Plaintiff's verbal complaints of injury, down-played written complaints of injury, withheld critical medical information, purposefully delayed emergency medical intervention, and under treated a full blown infection.

1.   On 8/11/2013, the Plaintiff contracted Necrotizing Fasciitis and began to report the symptoms verbally to medical staff.

2.   On 8/11/2013, the Plaintiff began to feel the extremely painful symptoms of Necrotizing Fasciitis.

3.   Plaintiff began to present his symptoms to staff but was ignored and delayed any evaluation.

4.   On 8/14/2013, Plaintiff presented to the Correctional Medical Care, Inc., Jane Doe Medical Provider, and Jane Doe Medical Provider, with symptoms of Necrotizing Fasciitis visually showing a 22cm by 15cm area in need of immediate emergency medical intervention.

5.   On 8/14/2013, the Defendants down-played the symptoms, lowered the recorded pain level, provided critical documenting to avoid having to do needed emergency intervention, and openly stated that "I don't have time for this."

6.   On 8/14/2013 the Defendants purposely avoided providing needed emergency medical intervention for Necrotizing Fasciitis, and left the Plaintiff with known treatments that "under reported" the conditions presented.

7.   On 8/15/2013, the Plaintiff presents to Jane Doe Medical Provider.  Doe evaluates the Plaintiff and documents the "deep" infection that was clearly untreatable by the medical staff.  However, the Plaintiff was denied relief from what was said to be

"extremely painful and intolerable pain."

8.   On 8/15/2013, Doe withheld measurements of the area injured, and withheld needed medical intervention for surgical removal of infection, and possible sepsis infection.  Plaintiff was to suffer another day until it was more convenient to make a trip to the emergency room.

9.   On 8/16/2013, Jane Doe Medical Provider, realized that the Plaintiff was in need of "alternative" medical intervention and canceled the Plaintiff's medication, ordered another medication, and continued to "delay" the needed medical intervention.

10.   On 8/16/2013, Doe avoided knowledge of the size of the wound, avoided documenting critical medical evaluation, avoided evaluation of reported injury, and pushed off the needed emergency medical intervention for "another day."

11.   On 8/17/2013, Jane Doe Medical Provider abandoned the Plaintiff and simply noted that the Plaintiff needed emergency medical attention for a "Eval" of his L thigh.  Doe avoided documenting critical medical information, down-played the emergency as a "Eval", and allowed the Plaintiff to be simply driven over to the Emergency Room as if no emergency was present.

12.   On 8/17/2013, Doe withheld known need for an emergency medical transport, and ordered Defendant John Doe Officer and Defendant John Doe Officer to chain the Plaintiff at the waist and ankles and force the Plaintiff to sit directly on the injury that was known to be 22cm by 15cm in size, with further swelling of the back left leg that reached the back of the knee.

13.   On 8/17/2013, Doe denied known needed medical transport with specific reporting of injured area protected from further harm.

14.   On 8/17/2013, Plaintiff was forced to sit directly on a wound known to be in need of emergency medical treatment - not evaluation - and then the forced sitting stretched the skin that was full of many fluid ounces of infection that lifted the skin as it filled with more and more infectious debris.  Upon arrival to the Samaritan Hospital, he was examined by a Medical Doctor who immediately knew Necrotizing Fasciitis was present, and moderate to severe inflammation in the left anterior and medial thigh region.

15.   On 8/18/2013, the Plaintiff was provided an emergency surgical removal of a skin area 22cm by 15cm, that went down about 1 inch.  The Plaintiff's muscle was visible from outside the body - extensive wound care and "serial monitoring" was prescribed.

16.   The Defendants were able to hide and down-play the Plaintiff's medical need for emergency medical intervention until it was shown by the Samaritan Hospital that the Plaintiff's life

was in danger by what is commonly known as the "Flesh Eating
Disease" Necrotizing Fasciitis.  See Exhibits 3, 4, 5, 7, & 8.

17.  The Defendants, with great indifference to the Plaintiff's
emergency needs, slowly drove the Plaintiff over to the hospital
while making him sit...sit...directly on a known injury in need
of emergency medical intervention.

## Defendants Violations

18.  Defendants were Deliberately Indifferent to the Plaintiff's
medical needs.

19.  Defendants withheld medical information from the Plaintiff's
records, avoided knowledge, and created and maintained "thin"
medical records to avoid exposure to liability - while continuing
abusive medical delays.

20.  The Defendants denied the Plaintiff needed proper treatment,
and delayed the Plaintiff's emergency medical intervention until
it was more "convenient".  Defendants withheld treatment from
8/14/2013 to 8/17/2013 - (the records support all dates).  See
Exhibits 1 & 2.

21.  Defendants then denied the Plaintiff medical transport to
the emergency room, and casually transported the Plaintiff while
cuffed and chained, being "forced" to sit with all his weight on
the injured body part.

22.  Defendants engaged in cruel and unusual punishment and
medical care abandonment or accommodations pursuant to the
Americans with Disabilities Act.

23.  Defendants, in whole, or in part, delayed treatment,
withheld treatment, abused the Plaintiff with painful and
improper transport, and caused the Plaintiff's condition to
become deadly and damaging to the Plaintiff's body.

24.  Plaintiff suffered the loss of bodily mass, which left his
left back leg groin area to be permanently disfigured.

25.  Plaintiff suffered extreme prolonged pain unnecessarily.

26.  Plaintiff's organs, specifically his kidneys, suffered
injury, and aging from the infection, and from the chemicals used
to fight the infection.

## Relief Sought

27.  Compensatory: The Plaintiff suffered the loss of physical body mass.  The Plaintiff's left leg upper thigh to his groin has been mutilated and deformed from the extraction of a piece of flesh 22cm by 15cm and 1 inch deep.  The forced sitting on the giant pocket of puss stretched the infection under and between more skin than need be.  The infection was "pressed" into the Plaintiff's body as the skin literally detached and peeled as it stretched from Plaintiff's weight combined with bumps in the road.  Plaintiff's infection was ignored from 8/14/2013 to the more "convenient" time to need emergency help on 8/17/2013.  The Plaintiff's organs have been "aged" by the use of heavy chemicals to fight the infection.  Plaintiff still has ghost pains from the missing nerves, and mental anguish.  Plaintiff will need plastic surgery as admitted to in Exhibits 1 through 20.  Plaintiff suffered kidney injuries (Exhibit 17, page 4) and collateral injuries from a deep vein thrombosis of the saphenous vein.  The pain, suffering, loss of body mass, aging of organs, injury of organs and deformations should be compensated by $5,000,000.

28.  Punitive Relief: As a deterrent to purposeful medical delay, denial, mistreatment, cruel and unusual punishment, the Defendants should be punished to deter future violations, and current violations in the amount of $5,000,000.

29.  Injunctive Relief: Plaintiff believes that the medical license of all Jane Doe Medical Providers should be stripped and cancelled.

## C. Third Claim

Deliberate Indifference, Denial of Proscribed Treatment, Denial of Medical Transport, Cruel and Unusual Punishment, Interference with Medical Treatment Plan, Denial of Accommodations Pursuant to Americans with Disabilities Act, the Privacy Act 552(a), and Federal Tort Claim against Federal Marshals.

Defendants

Parveen Khurshid, MD; United States Marshals Service Representative John Doe; Samaritan Medical Worker John Doe; Rensselaer County Jail; Correctional Medical Care, Inc.; Jane Doe Medical Provider; Jane Doe Medical Provider; and Case Management at Rensselaer County Jail John Doe did the following to me:

Claim

From 8/22/2013 to 8/31/2013, the above named Defendants interfered with needed wound after-care, altered needed care to insufficient care to save money, discharged the Plaintiff and subjected Plaintiff to an abusive transport back to jail, failed to properly care for Plaintiff, abandoned medical monitoring of Plaintiff needs - including nutrition and hydration, failed to document damages caused be abusive transport that was NOT medical, and caused collateral damages such as dehydration and

pre-septic conditions.

1.   On 8/22/2013, Samaritan Hospital Worker Jane Doe ordered the
needed wound vacuum for the Plaintiff due to the hole in his body
open to the air and contaminants.   However, the United States
Marshals Representative interfered with a medical treatment of a
serious injury and denied to authorize payment for the needed
wound vacuum ("wound vac") and essentially forced the Medical
Doctor of Samaritan Hospital to deny prescribed needed treatment.
See Exhibit 9.

2.   On 8/27/2013, Samaritan Hospital Worker Jane Doe received a
message from the United States Marshals Service representative
John Doe that refuses to pay for the needed wound vacuum.   See
Exhibit 10.

3.   On 8/31/2013, Parveen Khurshid, MD, discharged Plaintiff
without needed wound vacuum after discussing the altered wound
care with the Rensselaer County Case Manager, John Doe.   See
Exhibit 12.

4.   Plaintiff was discharged with basic wound care for entire
piece of open flesh that was said to need "serial monitoring" the
day earlier.   See Exhibit 11, page 3.

5.   Plaintiff was soon chained and forced to sit on the open
wound with basic packing inside it (see B. Second Claim), and was
returned to Rensselaer County Jail with inappropriate and
insufficient wound care (see Exhibit 13) while knowing that the
Plaintiff was already in significant pain and discomfort.   See
Exhibit 11.

6.   Defendants at the Rensselaer County Jail did not provide
"serial monitoring" as stated was required (see Exhibit 11, page
3) and failed to monitor and ensure the Plaintiff was hydrated
and cared for.

7.   Defendants then did fail at properly providing a proper
after-care for the wound by subjecting the Plaintiff to
conditions of confinement that were so filthy that the Plaintiff
immediately began to become septic and dehydrated causing injury
to his kidneys.   See Exhibit 18, page 2, & Exhibit 17, page 4.

8.   On 8/31/2013 at 3pm, Plaintiff was immediately admitted to
the Emergency Room and provided with fluids, antibiotics, wound
care, and a "sterile" environment to recover from the abusive and
damaging NON-medical transport to and then from, the Rensselaer
County Jail.

9.   Rensselaer County Jail Defendants, Correctional Medical Care
Inc., and it's medical providers and transport officer (John &
Jane Does), withheld transportation methods from the medical
records, and failed to inform the Samaritan Hospital Medical
Staff the "care" provided while Plaintiff was at the Rensselaer

County Jail, and the conditions of confinement that introduced the Plaintiff's open wound to unsafe and contaminated environment not meant for the Plaintiff in the post-surgical condition he was in.

## Defendants Violations

10.   United States Marshals interrupted needed medical treatment and "ended" the needed "Wound Vacuum" that was once prescribed. This was Deliberate Indifference to Plaintiff's pain and suffering and subjected the Plaintiff to multiple complications and further injury in violation of Eighth Amendment right against Cruel and Unusual Punishment, denial of reasonably adequate medical care, and denial of accommodations under the Americans with Disabilities Act.  This portion is also a Bivens Claim against the U.S. Marshals Service Representative.

11.   The Samaritan Hospital Worker Jane Doe and Parveen Khurshid, MD, withheld known needed medical after-care for post-surgical patient (Plaintiff) for reasons unrelated to medical decisions, and subjected the Plaintiff to ongoing complications and substantial risk of further injury that "did" cause injuries from 8/31/2013 until 9/6/2013 when the wound vacuum treatment was "finally" provided (see Exhibit 29).  Defendants violated Eighth Amendment ban on Cruel and Inhumane Punishment, Reasonably Adequate medical care, Breach of Duty, Violations of Oath, Breach of Contract, and violation of Americans with Disabilities Act.

12.   Rensselaer County Jail, Correctional Medical Care Inc., Jane Doe Medical Provider, John Doe Officer, John Doe Officer, and Rensselaer County Case Manager John Doe forced Plaintiff to undergo a painful and damaging non-medical transport that damaged the wound, caused extreme unnecessary pain and suffering on the way back to the Rensselaer County Jail, and then back to the Hospital when collateral damages were noticed.  The Defendants "did not" report the transport methods or the damages to the Samaritan Hospital Staff, nor does the record reflect any information at all.  Defendants abused the Plaintiff in violation of the Eighth Amendment ban on Cruel and Unusual Punishment, Americans with Disabilities Act accommodations, denial of medical transport as a needed "treatment", and hid the abuse from the medical records and maintained inaccurate records in violation of the Privacy Act 552(a).

13.   Defendants, Correctional Medical Care Inc., Jane Doe Medical Provider, Jane Doe Medical Provider, and Jane Doe Medical Provider ignored needed "serial monitoring", did not ensure that post-surgical patient had proper nutrition, sanitary recovery conditions, and purposefully provided sub-par wound care for a wound so deep that the actual muscle was visible outside the body.  The Defendants denied reasonably adequate care due to their prior knowledge of needed wound vac, provided conditions of confinement dangerous to the Plaintiff's medical needs, and then subjected the Plaintiff to lack of water and nutrition due to his

inability to ambulate.  Defendant violated Eighth Amendment right
to reasonably adequate medical care, withheld needed care,
subjected known "high risk" patient to conditions of confinement
"not" safe for patient with an open wound.

Relief Sought

15.  Compensatory: These Defendants worked together to end needed
expensive care, and subjected the Plaintiff to sub-par medical
care, denied medical transportation and abused the patient twice
on 8/31/2013, subjected the patient to conditions of confinement
not proper for an "open" wound that needed a "wound vacuum",
failed to properly monitor the patient, provided no help
obtaining and providing hydration and nutrition to the patient,
and continued to avoid the needed proper treatment for the
patient/Plaintiff.  Plaintiff suffered dehydration, acute kidney
injury, unnecessary pain and suffering and Cruel and Unusual
Punishment according to the Eighth Amendment.  Plaintiff's wound
was forced to stretch and be pressed under the weight of the
Plaintiff, and the wound was further hurt by the poor methods of
wound care that was wholly inappropriate - and "not" what was
originally proscribed on 8/22/2013.  Plainly, Plaintiff's
recovery was invaded by Deliberate Indifference to save money at
the expense of the Plaintiff's kidneys and risk of further
infection.  Plaintiff stayed at the hospital to recover for 3
expensive days until being ejected (see Fourth Claim).
Compensation for the acute kidney damage has caused aging of the
Plaintiff's organs and significantly increased Plaintiff's needs
in age.  Proper compensation should be $5,000,000 for loss and
future loss due to organ damages.

16.  Punitive: The Defendants acts were clearly to be prompted by
cost savings over proper care.  The intentional NON-medical
transports were obviously abusive and saved money that would have
been spent on medical transport.  The conditions of confinement
were inappropriate for a medical patient with an open wound.  The
smell of urine and feces was accompanied by visibly dirty
surroundings in the Rensselaer County Medical Wing.  Lack of
monitoring and lack of care/concern caused not only physical
injury, but long-lasting mental health issues similar to Post
Traumatic Stress Disorder.  Defendants abusive inactions will
never end unless the cost savings come with a heavy punishment
that outweighs the costs saved at the expense of the
inmates/Plaintiff.  Plaintiff asks the courts to punish the
Defendants with a $2,000,000 award to Plaintiff to deter any
further abuse.

17.  Injunctive Relief: The Courts should impose a mandate that
requires all post-surgical after care be provided medical
transport and all needed medical recovery materials, including a
sterile medical wing that is investigated and certified by a
Human Rights Advocate.

18.  Federal Tort Claim: The John Doe United States Marshals

Representative interfered with proscribed treatment plan on 8/22/2013, prevented proscribed "wound vacuum" wound care, and aided and assisted in the medical abandonment that attempted to put medical billing onto the "state" public outside the Rensselaer County Jail.

Defendant caused unnecessary pain and suffering from 8/31/2013 up until around 9/6/2013 when the originally prescribed "wound vac" was placed onto the Plaintiff but not before complications which include acute kidney injury (Exhibit 17), deep vein thrombosis, and extreme unnecessary pain and suffering caused by U.S. Marshals. Plaintiff suffered intentional infliction of emotional distress ("IIED") and permanent exaggerated disfigurement from all the actions that arose from 8/31/2013 to 9/6/2013 from the U.S. Marshals medical refusal to allow a medical doctor to provide needed treatment. Defendant John Doe U.S. Marshals Service Representative was not a medical professional, however, they acted as one when making medical decisions to NOT provide a proscribed treatment. This is a Bivens claim and a Federal Tort Claims Act. Relief requested is $5,000,000 due to the blatant interference of proscribed treatment of a serious injury that led to complications and collateral damages gauged by Bivens, and $5,000,000 for Federal Tort Claims Act for Gross Malpractice, Intentional Infliction of Emotional Distress, and Damages under FTCA.

## D. Fourth Claim:

Cruel and Unusual Punishment, Denial of Medical Treatment, Abandonment of Duty, Breach of Contract, Medical Abuse, Attempted Medical Billing Fraud that Caused Injury, Violation of Americans with disabilities Act, Deprivation of Plaintiff's Civil Rights, Purposeful Failure to Protect the Plaintiff, and Equal Protection under the Law.

Defendants:
United States Marshals Service Representative; Correctional Medical Care, Inc.; Rensselaer County; Rensselaer County Jail; Jane Doe Medical Provider; Jane Doe Medical provider; Jane Doe Medical Provider; Jonn Doe Medical Provider; John Doe Medical Provider; John Doe Medical Provider; John Doe Medical Provider; John Doe Medical Provider; Jane Doe Samaritan Hospital Medical Provider; Jane Doe Samaritan Hospital Medical Provider; and Jane Doe Medical provider.

Claim:
On 9/3/2013, the above named Defendants did the following to Plaintiff:

1.   From 8/17/2013 to 9/3/2013, the Plaintiff's medical conditions had evolved into extremely expensive medical interventions that include surgery followed by complications. During the medical care being provided at Samaritan Hospital, the proscribed ongoing treatment was to have a "wound vacuum" placed over the Plaintiff's large open wound to prevent infection and

aid the healing process. Due to Plaintiff's original infection which resulted in removing a large piece of his flesh - it would only make sense to assume the patient was susceptible to infections.

2.    On 8/22/2013, the prescribed wound vacuum was refused and denied payment by the Federal Marshals Service Representative John Doe. It was documented that they "do not want to pay for it" in Exhibit 9.

3.    On 8/31/2013, Plaintiff is discharged without the wound vacuum and was shown to immediately have complications that led to re-admission on 8/31/2013 - only 6 hours after release. Plaintiff suffered, among other issues, a kidney injury and was said to be "pre-septic" from infection.

4.    By 9/3/2013 the Plaintiff had racked up 17 days in the hospital. The Plaintiff was stabilized and was known to need continual post-surgical wound care. However, the Rensselaer County Jail did not want to pay for it, nor did the Federal Marshals Service. As already stated in exhibit 9, the Marshals did have a problem with paying medical bills, and they did already interfere with prescribed treatment to avoid billing.

5.    The Federal Marshals, Rensselaer County, Rensselaer County Jail, Correctional Medical Care, Inc., and all other Defendants worked in concert with no objections or recusals, to have the Plaintiff released from his legal obligations for transfer to hospital for ongoing medical treatment. United States Marshals Representative, with medical evidence and support from "unknown Jane and John Does", convinced a Federal Judge that releasing the Plaintiff for ongoing medical attention was a necessity that outweighed public safety concerns. See Exhibit 20.

6.    On 9/3/2013, Federal Senior U.S. District Judge Frederick J. Scullin Jr. was convinced by private and closed pleadings that the Plaintiff was to be released from custody to be "transferred" to Albany Medical Center. The Plaintiff was officially "released from custody, for the sole purpose or receiving treatment for his medical condition." See Exhibit 20.

7.    On 9/3/2013, the Plaintiff was picked up and transferred back to the Rensselaer County Jail where he was to be released and transferred to the Albany Medical Center as stated in District Court's "Order" releasing him. However, the Defendants did not want to pay for the bill that would then accumulate if the Plaintiff was admitted to the Albany Medical Center by <u>transfer</u> from one hospital to another.

8.    On 9/3/2013, the Plaintiff, a known documented hospital patient known to be needing "transfer" to another hospital for continued care and monitoring, was taken from the Samaritan Hospital, brought to the County Jail, and told to find his own way to the Hospital for his own ongoing care.

9.   On 9/3/2013, at around 11am, the Plaintiff was left to find his own medical transport to continue his care.  Plaintiff in extreme pain and discomfort, with no ability to obtain needed wound care, dressing changing, inability to obtain prescriptions, no money, no transportation, no transfer, no transfer information or assistance, and in obvious medical distress, found himself standing at a pay phone calling friends and family for help at no immediate eval.

10.  Plaintiff was forced to stand outside for many hours waiting for a family member to pick him up.  During the long wait Plaintiff suffered without medical accommodations known to be needed by "All Defendants", Plaintiff was left with no medications and no way to get prescriptions.  See Exhibit 22.

11.  Plainly, the Plaintiff was dumped to the curb immediately after the District Court released him.  This dumping is known as "Patient Dumping" and has been litigated in District Courts before.  Specifically, the Albany Memorial Hospital has characterized it as a "precipitous" discharging by the facility (see Exhibit 22, page 4).

12.  Plaintiff, with no real plan of transfer information, was unable to find the proper hospital for 7 hours as he was driven all around while in obvious distress that includes extreme pain from being forced to sit directly on the open wound instead of being given a "medical transport."  Plaintiff, a diabetic, became dizzy, confused, faint, sick, and was unable to continue when he arrived at Saint Mary's Hospital.  Plaintiff then was stuck in the Emergency Room for another 4 to 5 hours before he was presented with no arrangements made for transfer (Exhibit 21), no ability to get prescriptions filled (Exhibit 22, page 1), and a "large wound" in need of immediate care (see Exhibits 22, pages 1, 2, 4 & 5; 23, pages 1, 2, and 3; 24, pages 1, 2, and 3; and 21).

13.  On 9/3/2013, The Defendants achieved a Federal District Court Order to Medically Release the Plaintiff to transfer the Plaintiff to Albany Memorial Hospital.  Instead, they dumped him to the curb to avoid being billed as they would if they transferred him from one hospital to the next.  The Plaintiff suffered horrific pain and absolute medical abandonment for what a Federal Court Judge had stated was needed to release for continued care when transferred.  See Exhibit 20.

14.  On 9/3/2013, the Federal Marshals, presented evidence to the U.S. Senior District Court Judge Frederick J. Scullin Jr. the need to transfer the Plaintiff to a specific hospital for what he states the inmate "will remain hospitalized."  However, that was not done.  All Defendants were aware of Plaintiff's condition, all Defendants were aware of either the medical needs of the Plaintiff or the District Judge's ORDER RELEASING Defendant.

Instead, the Defendants abandoned their duty, denied ongoing medical accommodations, defied a Court Order, and pushed the Plaintiff off on the County/Public to avoid ongoing medical billing.  See Exhibit 25.

## Defendants Specific Violations

15.  Defendants violated the ban on Cruel and Unusual Punishment.

16.  Defendants violated a Federal District Court Order to avoid billing.  See Exhibit 20.

17.  Defendants punished the Plaintiff, a detainee, without Due Process pursuant to Fourteenth Amendment.

18.  Defendants attempted medical billing fraud by "dumping the patient" so that the continued billing was neither Federal Marshals responsibility, or the Rensselaer County Jail's.

19.  Defendants denied accommodations according to Americans with Disabilities Act.

20.  Defendants caused _intentional_ infliction of emotional distress under the Federal Torts Claims Act.

21.  Defendants withheld Equal Protection of the Law by refusing to provide as the Court Order had stated "transfer to hospital", and opting to "Patient Dump".

22.  Defendants deprived Plaintiff of Civil Rights and failed to protect the Plaintiff in _ANY_ way, and were Deliberately Indifferent to Plaintiff's medical needs.

## Relief Sought:

23.  _Compensatory_: Defendants worked in concert to defy the District Court Judge's Order and abandoned the Plaintiff's known medical needs of ongoing treatment.  Plaintiff was subjected to extreme deprivation of medical care recognized by, and ordered by a Federal Judge.  Plaintiff was physically and mentally abused for 14 hours when he should have been transferred from one hospital to another.  Plaintiff's ability to heal properly was hindered from the forced prolonged standing and sitting on the wound and lack of wound care, water, food and medication. Plaintiff's separation from his continuous care for 14 hours was a horrific and painful attempt to avoid billing.  Compensation should be gauged not only on loss of physical but mental health post traumatic stress effects that occur when a person is abused. $5,000,000 is appropriate to compensate the Plaintiff.

24.  _Punitive_: Defendants were all aware of the District Court's Order to release for transfer from one hospital to another. However, the Defendants pulled the Plaintiff directly from a hospital bed to a street corner curb with no directions, no

medical assistance, no money, no transportation, no food or water, and absolutely no care and concern for the Plaintiff. Plaintiff was left to fend for himself, failed at getting to the correct hospital, suffered tremendously and was forced to endure sitting on an open wound or standing - when the Plaintiff should have been medically transferred as the District Court Judge had agreed to and Ordered.  Plaintiff believes this is not the only patient dumping that has ever occurred.  Defendants will continue to dump patients at the expense of patient's health and LIFE if the cost savings are not detoured by loss and punishment. Plaintiff can not express enough how horrific the experience was. Plaintiff suggests that this court give plenary review to the effects of a "Just" punishment to end future patient dumping. Accordingly, Plaintiff asks that the Defendants pay no less than $5,000,000.

25.  Federal Tort Claims: Plaintiff asks for $3,000,000 specifically due to U.S. Marshals deprivation of rights, intentional infliction of emotional distress, and damages caused by 14 hours of allowing a bed-ridden hospital patient to be stripped from his bed and ejected to the streets in violation of a Court Order that said otherwise.

26.  Injunctive Relief: Plaintiff asks that the District Court use its powers to end patient dumping, and the U.S. Marshals use of Orders of Release to avoid ongoing billing and what shows to be attempted medical billing fraud done by patient dumping.

## E. Fifth Claim:
Deliberate Indifference, Denial of Medical Accommodations, False and Inaccurate Medical Record Keeping to Hide Medical Denials, Cruel and Unusual Punishment, Violations to the Privacy Act 552(a), Right to Have Accurate Medical Records, and Denial of Americans with Disabilities Accommodations to save money at expense of Plaintiff.

Defendants:
Rensselaer County; Rensselaer County Jail; Correctional Medical Care, Inc.; Jane Doe Medical Provider; Jane Doe Medical Provider; John Doe Medical Provider; John Doe Medical Provider; John Doe Medical Provider; John Doe Officer; John Doe Officer; John Doe Officer; John Doe Officer; John Doe Officer; and John Doe Officer.

Claim:
     From 9/6/2013 to December 2013, the Defendants did the following to the Plaintiff:

1.  The Defendants received the Plaintiff after around 20 days of hospitalizations that resulted in Plaintiff's post-surgical wound on his upper back leg to his groin fitted with a wound vacuum upon release on 9/6/2013.

2.  Defendants were aware of Plaintiff's original surgery

(Exhibit 8), Denial of needed wound vacuum (Exhibit 9), Medical
Complications (Exhibit 15), Injuries Caused by Complications
(Exhibit 17), and subsequent wound on the "sitting" portion of
his buttocks and groin.

3.    Defendants were "keenly" aware of the size of the missing
flesh.  Specifically, the open size of the wound was mentioned as
follows:
(1) Exhibit 8, page 2: 15cm by 22cm hole;
(2) Exhibit 12, page 2: 15cm by 22cm hole; and
(3) Exhibit 22 page 2: 10cm by 10cm hole.

4.    Defendants can not claim that they did not know the
Plaintiff had a post surgery wound entitled to special medical
care in transport.

5.    Defendants had deemed him a "NON-Public threat" when the
U.S. Marshals and the Rensselaer County Jail had a Federal
District Court Judge release the Plaintiff of custody so he can
get continued medical attention on 9/3/2013.  See Exhibit 20.

6.    Defendants, by the way of their pleadings to a federal Judge
(Exhibit 20) stated that the Plaintiff was not a risk to the
public and was deemed trustworthy enough to be in the public on
9/3/2013.  See Exhibit 20.

7.    On 9/6/2013 to December 2013, the Plaintiff was transported
and forced to sit on his open and healing wound over 20 times for
around 1 hour each time.  This was said to be done due to
security concerns that were not present from 9/3/2013 to
9/6/2013.  There were no actions by the Plaintiff that would make
his security needs be increased that could justify him being
forced to sit on his wound.

8.    On 9/6/2013 to December 2013, the Defendants allowed the
Plaintiff to be shackled at the ankles, around the waist, and
cuffed to his stomach.  Plaintiff had absolutely no choice but to
be forced to sit on the open wound for transport to a wound care
clinic.  See Exhibit 29.

9.    Defendants did not ever document, record, report, or convey
the transport methods to the Rensselaer County Jail, Correctional
Medical Care Inc., and/or Samaritan Hospital, Albany Memorial
Hospital, and it's Affiliate Wound Care Facility.

10.   Defendants were able to avoid costly medical transports
under the guise of "security" when security was not an issue 6
days earlier on 9/3/2013.  See Exhibit 20.

11.   Defendants withheld needed medical accommodations, withheld
abusive transport methods from the record, saved money from the
withholding, and did so at the expense of Plaintiff's physical
and mental health.

- 24 -

Defendants' Violations:

12.   Defendants withheld medical accommodations and violated
Americans with Disabilities Act accommodations.

13.   Defendants denied critical medical information from the
Samaritan Hospital, Albany Hospital, Saint Mary's Hospital and
Affiliate Wound Care Clinics seen until December 2013.

14.   Defendants engaged in Cruel and Unusual Punishment with
Deliberate Indifference.

15.   Defendants violated the Privacy Act 552(a), and is
punishable by fine for Collateral Damages caused by inaccurate
medical records.

16.   Defendants, again, subjected the Plaintiff to substantial
risk of harm and substantial pain and suffering, that resulted in
prolonged continuous pain, prolonged healing and needless medical
interference for the purpose of saving money that would normally
be spent on medical transporting - or less restrictive measures.

Relief Sought

17.   Compensation: The Defendants denials caused needless pain
and suffering that hindered the Plaintiff's ability to heal and
prolonged the healing process and subjected the Plaintiff to
substantial risk of harm.  Plaintiff suffered horrific pain that
stretched the wound when he put all his weight on it during non-
medical transport.  $1,000,000 will compensate the Plaintiff's
needs for plastic surgery to cover the extensive wound that can
easily be said was injured repeatedly by over 20 forced rides
that smooshed the wound, tore the wound, and stretched the new
growth and caused deformities seen today.

18.   Punitive: The Defendants traded the cost savings on medical
moves by transporting the Plaintiff as if he did not have a hole
in his body.  See Exhibits 8, 12 & 22.  Defendants caused extreme
pain and suffering that further deformed the Plaintiff's body.
Plaintiff believes that the Defendants deliberate indifference
was to save money at the expense of Plaintiff's medical needs.
Defendants claims of security will not stand, nor a claim that it
fit any true penological goal beyond cost savings.  Defendants
need to be detoured from trading inmates medical needs for cost
savings.  $2,000,000 would deter future abuse and medical denial.
Also, the Defendants lack of reporting, documenting or conveying
to any record the transport methods and their abuse was an act to
conceal - they must be punished with a solid deterrent that would
make further use of this method unsustainable.

19.   Injunctive Relief: The Defendants abusive methods need to be
stopped by Court Intervention.  Plaintiff trusts that the Courts
will design a method to end future abuse.

## Closing Relief for All Claims

1.   Total Compensatory Damages:            $ 21,000,000

2.   Total Punitive Damages:               $ 16,000,000

3.   Federal Tort Claim:                   $  8,000,000

4.   Total of Compensatory,
     Punitive Damages and
     FTCA:                                 $ 45,000,000


Respectfully submitted,

6/4/2017